**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SW FINANCIAL SERVICES CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25 C 9303 |
| | ) |
| THE CORNERSTONE INSURANCE | ) Judge Rebecca R. Pallmeyer |
| GROUP, LLC, ASSUREDPARTNERS | ) |
| CORNERSTONE, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Relying on the advice of its insurance brokers—Defendants AssuredPartners Cornerstone and Cornerstone Insurance Group—in 2019, Plaintiff SW Financial Services ("SW Financial") hired third-party Paradigm Health Group to help manage Plaintiff's self-funded insurance plan. Two years later, Plaintiff decided to end its relationship with Paradigm. Defendants advised Plaintiff to make a refundable $1.5 million deposit with Paradigm to fund outstanding claims that had not yet been paid. Plaintiff paid the amount, but later discovered that the payment was unnecessary. Efforts to recover a refund from Paradigm itself failed. In this action under the court's diversity jurisdiction, Plaintiff alleges that Defendants negligently misled SW Financial by directing it to make the payment, leading to a $1.5 million loss. Plaintiff asserts Illinois tort and contract law claims, and Defendants have moved to dismiss [45] the complaint as untimely. As explained below, the motion is granted and the complaint is dismissed without prejudice.

**BACKGROUND**

The facts laid out below are taken from the First Amended Complaint ("FAC") [44], which the court accepts as true at the pleading stage. *See Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025).

This case concerns a complex commercial dispute between SW Financial and Defendants. The operative complaint is short and sparse on detail, but as the court understands

1

the allegations, Defendants are insurance brokers that "specialize[] in employee benefits, property and casualty, and risk management." (FAC [44] ¶¶ 2, 3.) They hold themselves out as "experts in the field of self-funded health plans," and claim on their website that they "combine[] local and national professionals to ensure [employers] realize the maximum return on [their] healthcare investment." (*Id.* ¶ 12.) According to the FAC, Plaintiff entered into an oral agreement[1] under which Defendants agreed to provide a variety of services related to SW Financial's deals with third-party Paradigm Health Group, LLC ("Paradigm"), a company that "provided a self-funded health benefits program for the benefit of [SW Financial's] employees."[2] (*Id.* ¶ 8.) Under the terms of this deal, Defendants agreed to serve as Plaintiff's agent in all dealings with Paradigm; to coordinate Plaintiff's insurance "needs and preferences"; to provide advice to Plaintiff about the plan; and to use "their expertise to prevent overcharges and overpayments." (*Id.* ¶ 13.) Plaintiff never communicated with Paradigm directly, and instead conducted all of its business with Paradigm using Defendants as intermediaries.[3] (*Id.* ¶ 14.)

On February 1, 2019, Plaintiff entered into a contract with Paradigm to "implement and administer" a "self-funded health benefits program for the benefit of Plaintiff's employees and their dependents." (*Id.* ¶¶ 7–10.) The circumstances of this deal, as well as its origin, are not alleged in the complaint. Because Plaintiff claims that it never communicated with Paradigm directly, the court assumes that Defendants negotiated the contract on behalf of Plaintiff, and that Plaintiff

---

[1]    Neither party has asserted, at least not at this early stage, that this agreement is invalid under the statute of frauds.

[2]    The court understands a self-funded health insurance plan to be one that is fully paid for by the employer itself. Paradigm's exact role in this process is somewhat unclear—the complaint says only that Paradigm "implement[s] and administer[s] the Plan." (FAC [44] ¶¶ 8–10.) The court assumes that Paradigm pays healthcare providers and manages claims on behalf of SW Financial, the self-insured employer.

[3]    The complaint is silent as to when Plaintiff's relationship with Defendants began. Because the agreement with Paradigm was signed on February 1, 2019, the court assumes that the contract between Plaintiff and Defendants was consummated sometime prior to that date.

signed the agreement on the advice of Defendants. In this contract, Paradigm agreed to "provide, or cause to be provided by or through its service vendors" those "services as are necessary . . . to implement, supervise, and administer the Plan." (Client Service Agreement [44-1] at 2.) Relevant here, Paradigm also agreed to place a stop-loss insurance policy that provided "specific stop loss coverage on individual claims in excess of $80,000," in addition to aggregate stop-loss coverage. (*Id.*) The parties have not explained the function of stop-loss insurance, but the court understands it to be a form of insurance that protects self-insured employers from paying extremely high value or catastrophic claims filed by their employees.[4]

At some later point, Plaintiff concluded that the "Plan with Paradigm" was "not meeting Plaintiff's expectations" (in ways not described in the complaint) and decided to cancel the Paradigm policy. (*Id.* ¶ 15.) Plaintiff does not say when the decision was made, but the complaint alleges that cancellation became effective on January 31, 2021. (*Id.*) The cancellation did not discharge all of Paradigm's obligations, however—under the terms of its agreement with Plaintiff, Paradigm was required to administer benefits that were "incurred" while the plan was still active, but were not paid prior to the termination date. (*Id.* ¶ 16.) The parties refer to this period as the "Run Out Period." (*Id.*)

At an unidentified time prior to the cancellation becoming effective, Defendants contacted Plaintiff and advised that Plaintiff "was required to fund $1,500,000 with Paradigm for the Run Out Period before January 31, 2021." (*Id.* ¶ 17.) As best the court can determine, the payment was required by the following language in Plaintiff's contract with Paradigm:

> Upon early termination of this Agreement, the Client will be held liable for the fees associated with administering the defined run out period which will commence at the termination of this policy . . . Client will be liable for funding such fees prior to the administration of the agreed upon runout period between Paradigm Health

---

[4] "'Stop-loss insurance' is generally defined as coverage to self-funded plans above a certain level of risk absorbed by the plan, and it provides protection to the plan, not to the plan's participants or beneficiaries, against benefits payments over the specified level, called the 'attachment point.'" 1 COUCH ON INS. § 1:5 (3d ed. 2026).

3

Plans and the Client. Client shall also be held liable to provide sufficient funding coverage for claim funding during this period.

(Client Services Agreement [44-1] at 10.) Defendants represented that this amount would be refunded to Plaintiff once "stop loss claims were paid," evidently by the stop loss insurer. (*Id.* ¶ 23.) The complaint is less than illuminating concerning the reason for this payment, but the court assumes the money was intended as a refundable deposit of funds to be used by Paradigm for payment of any claims for benefits against Plaintiff's self-funded insurance made during the Run Out Period. Because not all of this money would be used by Paradigm to pay claims—and because a portion of the claims would be paid by the stop loss insurer—the leftover portion would then be refunded to Plaintiff.

Acting on the representation of Defendants, Plaintiff paid Paradigm the $1.5 million payment on January 26, 2021. (*Id.* ¶ 18.) But unbeknownst to Plaintiff, the stop loss insurer had already paid $1,455,054.49 to fund the Run Out Period, evidently meaning that Plaintiff actually owed Paradigm far less money than Defendants had directed Plaintiff to pay. (*Id.* ¶¶ 19–20.) Plaintiff sought a refund, but for unclear reasons, Paradigm was either unable or unwilling to provide the full refund. Instead, Paradigm refunded only $268,033.72 by depositing it into Plaintiff's bank account (*id.* ¶ 24), but then "immediately removed the funds from Plaintiff's account," evidently before Plaintiff could access it. (*Id.*) Paradigm made no further payments, and Plaintiff never received any portion of the refund it was due. Plaintiff pursued damages from Paradigm, but this effort was unsuccessful; while Plaintiff prevailed at a 2024 arbitration and was awarded $1.1 million, Plaintiff has been unable to collect that award, as Paradigm is evidently "no longer an operational business." (*Id.* ¶¶ 38–40.)

Plaintiff argues that Defendants are responsible for the lost $1.5 million. Plaintiff contends that Defendants negligently directed Plaintiff to make a payment, and that Defendants would not have given such a direction had they exercised due diligence and investigated whether the stop loss insurer had already paid Paradigm. Plaintiff accuses Defendants of having "failed to

4

adequately investigate the legal and/or business need for the [payment]," and for having "failed to disclose to Plaintiff that Plaintiff did not actually have to make the payment." (*Id.* ¶ 22.) Plaintiff alleges, further, that Defendants did not "have safeguards in place to protect Plaintiff from overcharges," and did not "explain[] to Plaintiff why they did not understand and/or never investigated the payments made by the stop loss insurer." (*Id.* ¶ 25.)

This lawsuit resulted. The case was originally filed in state court in Cook County, Illinois, but was removed to federal court by Defendants on August 4, 2025. After some procedural back and forth,[5] on January 26, 2026, Plaintiff filed an amended complaint alleging breach of fiduciary duty (Count I), breach of contract (Count II), negligent misrepresentation (Count III), negligence (Count IV), and professional negligence (Count V), all under Illinois state law. Defendants have moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6); the motion has since been fully briefed, and the court heard oral argument on April 8, 2026.

## LEGAL STANDARD

Defendants have moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion challenges the sufficiency of a complaint—not its merits. To survive, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, the complaint must "offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' . . . or, put

---

[5] Plaintiff previously moved for remand [10] to state court, citing a lack of federal diversity jurisdiction. The court orally denied that motion during a hearing on September 19, 2025. (*See* Minute Order [22].) Plaintiff is a citizen of Illinois; Defendant AssuredPartners is a terminated Missouri LLC that, prior to its termination, had as its sole member a Delaware corporation with its principal place of business in Florida; CIG is also a terminated Missouri LLC that, prior to termination, was comprised of two members who were both Missouri corporations with their principal place of businesses in Missouri. (*See* Opp'n to Mot. to Remand [13] at 2–3.) The court thus concluded that because Plaintiff is a citizen of Illinois, and because no Defendant is a citizen of Illinois, complete diversity exists. (*See* Sept. 19, 2025 Tr. at 1–2 ("Be that as it may, we now know the members of Cornerstone LLC are in fact diverse in citizenship from Plaintiff as is the member of AssuredPartners.").) *See* 28 U.S.C. § 1332.

another way, a 'story that holds together.'" *See Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Plaintiffs are not required to plead "elements in his or her complaint that overcome affirmative defenses," but "'when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299–300 (7th Cir. 2018) (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)).

In assessing the sufficiency of the complaint, the court assumes the truth of the facts alleged, and draws all reasonable inferences in the non-movant's favor. *Gociman*, 41 F.4th at 878.

**DISCUSSION**

Defendants assert that the complaint should be dismissed as untimely due to an Illinois state statute that imposes a two-year statute of limitations on certain actions against insurance brokers. (Mem. [46] at 4–5.) The relevant provision provides that

> All causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer . . . concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues.

735 ILCS 5/13-214.4. Defendants contend that they are "insurance producers" under state law,[6] and that because this case arises out of the "cancellation of" SW Financial's policy with Paradigm, it is untimely.

---

[6] Under Illinois law, an "insurance producer" is "a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10. SW Financial argued that "Defendants have [] not met their burden of establishing" that they qualify as insurance producers, pointing to the lack of evidence that Defendants are registered as insurance brokers in Illinois. (Opp'n [52] at 5.) This argument is inconsistent with Plaintiff's own complaint, which alleges that "[a]t all relevant times, Defendants were 'insurance producers' as defined by the Illinois Insurance Code." (FAC [44] ¶ 79.) Indeed, it appears to have been withdrawn during oral argument. (*See* Oral Arg. Tr. at 16:19–24 ("Mr. Lara: Yeah, we're not disputing that defendants are insurance producers.").) The court assumes that Defendants are indeed "insurance producers" under 735 ILCS 5/13-214.4.

6

The court agrees. The complaint alleges that Defendants incurred liability by giving Plaintiff inaccurate advice, falsely telling Plaintiff that it owed Paradigm $1.5 million to pay out those claims that remained following the cancellation of Plaintiff's plan with Paradigm. This appears to fit squarely within § 214.4, as the facts "concern[] the . . . cancellation of . . . any policy of insurance." 735 ILCS 5/13-214.4. Indeed, the Illinois courts have adopted an expansive interpretation of the language used in the statute of limitations. In *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 753 N.E.2d 442, 257 Ill. Dec. 247 (1st Dist. 2001), for instance, the court read the statute of limitations broadly, writing that

> The statute [of limitations] as written is unequivocal and subject to only one reasonable interpretation: that *all* causes of action brought by *any* person or entity under *any* theory against an insurance producer shall be brought within two years of the date the cause of action accrues.

324 Ill. App. 3d at 303, 753 N.E.2d at 445, 257 Ill. Dec. at 250. In short, the statute imposes a clear restriction on the liability faced by insurance producers. Because the payment was made on January 26, 2021, Plaintiff's filing of this lawsuit on March 27, 2025, missed the two-year deadline by several years.

Plaintiff counters by arguing that its case is not about the cancellation of insurance policies, but about misrepresentation, breach of contract, negligence, and breach of fiduciary duty associated with the $1.5 million payment. True, a dispute about a payment does not "concern[] . . . cancellation" simply because the payment occurred after cancellation, just as a claim during the lifetime of the insurance policy does not "concern[] . . . the sale" of that policy. 735 ILCS 5/13-214.4. But here, the facts in the complaint show that all the claims in this lawsuit surround the $1.5 million payment that Defendants erroneously told Plaintiff to make as a result of Plaintiff's cancellation of its insurance plan. It may be that information that does not appear in the complaint would shed light on the nature and purpose of this payment and demonstrate that it is in fact unrelated to cancellation—for example, an allegation that a payment like this one was a routine part of Plaintiff's relationship with Paradigm, or that the payment had a purpose

independent of the cancellation of the policy. Plaintiffs may amend their complaint to this effect. But as currently written, the only plausible reading of the complaint is that this payment concerned the cancellation of an insurance plan. It thus appears to be untimely under state law.

Plaintiff also attempts to invoke the discovery rule, under which a claim does not accrue for the purposes of the statute of limitations until "the plaintiff reasonably should know that he has been injured and that the injury was wrongfully caused." *In re marchFIRST Inc.*, 589 F.3d 901, 903–04 (7th Cir. 2009). Plaintiff claims that the "FAC does not conclusively establish when Plaintiff knew or reasonably should have known" that it was injured, thus foreclosing dismissal for untimeliness. (Opp'n [52] at 9.) But even at the pleading stage, a party invoking the discovery rule "bears the burden of proving the date of discovery." *marchFIRST*, 589 F.3d at 904. Plaintiff, a commercial entity, does not do so: nowhere in its complaint or briefing does it explain when, exactly, it became aware (or reasonably should have been aware) of the injury. This is reason alone to reject Plaintiffs' invocation of the discovery rule. *See id.* (affirming district court's dismissal for untimeliness); *see also Horan v. Ford Motor Co.*, No. 1:21-CV-01116, 2026 WL 395630, at *8 (N.D. Ill. Feb. 12, 2026) (rejecting, at the pleading stage, the plaintiff's invocation of the discovery rule where the plaintiff "provides no factual support for a later statute of limitations start date").[7] Moreover, the operative complaint alleges facts that appear to foreclose the discovery rule: The FAC alleges that Plaintiff filed an arbitration demand against Paradigm on January 16, 2023; Plaintiff was certainly aware of the injury at that point in time, more than two years before filing this lawsuit. If Plaintiff wishes to continue in invoking the discovery rule, it should include additional allegations in the amended complaint that support its application.

## CONCLUSION

The motion to dismiss [45] is granted. The complaint is dismissed without prejudice.

---

[7] The *Horan* plaintiff has appealed the district court's dismissal of his case to the Court of Appeals. *See Horan v. Ford Motor Co.*, No. 26-1730 (7th Cir.). The appeal is currently pending, and briefing has not yet commenced.

8

Plaintiff has leave to file, on or before July 2, 2026, an amended complaint that includes additional factual allegations that could support (1) its apparent claim that the facts of this case do not relate to the "cancellation" of an insurance policy, and/or (2) its invocation of the discovery rule. Defendants are directed to respond to any amended complaint 21 days thereafter.

ENTER:

Dated: June 4, 2026

REBECCA R. PALLMEYER
United States District Judge